UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ESTATE OF BETTY LOU | ) | |
| McDERMED, Deceased by and | ) | |
| and through DIANE L. McDERMED, | ) | |
| ADMINISTRATOR, as her | ) | |
| Representative, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.   14-cv-2430-CM-TJJ |
| | ) | |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Ford Motor Company's Motion to Strike

Plaintiffs' Untimely Supplemental Rule 26 Disclosures (ECF No. 96). Defendant requests that the

Court enter an order striking certain witnesses, scholarly articles, and documents identified in

Plaintiffs' Rule 26(e)(1) Supplemental Initial Disclosures as untimely and highly prejudicial. For

the reasons set forth below, Defendant's motion to strike is granted in part and denied in part.

## I.      Factual Background and Procedural History

This product liability case asserts claims that Betty McDermed (hereinafter "decedent")

died of injuries sustained in a motor vehicle accident involving a vehicle manufactured by

Defendant that was defective. Plaintiffs allege that the front-seat, passenger side three-point

lap/shoulder belt retractor or latch either failed to lock or locked late, which resulted in the

decedent being propelled forward violently and striking the inflating airbag.

Plaintiffs filed their Complaint in this case on August 28, 2014, and served their Rule 26(a)(1) initial disclosures on November 26, 2014.[1] On December 3, 2014, the Court entered a Scheduling Order, which set a November 13, 2015 discovery deadline. The Scheduling Order also required that the parties' final supplemental disclosures be served 40 days before the deadline for completion of discovery. It also provided the following guidance regarding the parties' Rule 26(a)(1) and "timely Rule 26(e)" disclosures:

> The supplemental disclosures served 40 days before the deadline for completion of all discovery must identify all witnesses and exhibits that probably or even might be used at trial. The opposing party and counsel should be placed in a realistic position to make judgments about whether to take a particular deposition or pursue follow-up "written" discovery before the time allowed for discovery expires. Should anything be included in the final disclosures under Fed. R. Civ. P. 26(a)(3) that has not previously appeared in the initial Rule 26(a)(1) disclosures or a *timely* Rule 26(e) supplement thereto, the witness or exhibit probably will be excluded from offering any testimony under Fed. R. Civ. P. 37(c)(1).[2]

On June 22, 2015, the parties filed a Joint Motion to Extend Discovery Deadlines (ECF No. 41). In the motion, they requested extensions of all the case deadlines, including a request to extend the discovery deadline. The Court held a telephone status/scheduling conference the following day, and issued an Amended Scheduling Order (ECF No. 43) on June 24, 2015, granting in part and denying in part the motion to extend case deadlines. The discovery deadline was extended to December 15, 2015.

---

[1] Pls.' Cert. of Service, ECF No. 18.

[2] Scheduling Order ¶ 2(c), ECF No. 21 (emphasis added).

Defendant timely served its Supplemental Initial Disclosure Statement on November 5, 2015.[3] Plaintiffs served their Rule 26(e)(1) Supplemental Initial Disclosures on November 24, 2015[4] (hereinafter "Supplemental Initial Disclosures"), which was 19 days after the parties' deadline for final supplementation of their initial disclosures.

The Court held a telephone status conference on December 11, 2015 to discuss discovery issues raised by the parties, including the supplementation of initial disclosures.   The Court followed up with its Order Memorializing Rulings from December 11, 2015 Status Conference (ECF No. 90). That Order provides:

> Plaintiffs admitted and the Court found that Plaintiffs' Rule 26(a)(1) Supplemental Initial Disclosures, served on November 24, 2015, were not served by the deadline set for supplementation in the Scheduling Order and are untimely. When the Court inquired why the disclosures were late, Plaintiffs' counsel stated that many of the individuals identified in the supplemental disclosures were previously disclosed to or known by Defendant. Counsel for Defendant disputed that Plaintiffs had previously identified as potential witnesses numerous individuals listed in Plaintiffs' November 24 supplemental disclosures. The Court finds that Plaintiffs have not shown just cause or excusable neglect for the untimeliness of their supplemental initial disclosures.
>
> Plaintiffs shall review their supplemental disclosures served on November 24, 2015 for the purpose of identifying the names of witnesses not previously disclosed in their Rule 26(a) or (e) disclosures.   By December 23, 2015, Plaintiffs' counsel shall notify defense counsel whether he is willing to withdraw any of the supplemental disclosures and, if so, identify those names he is willing to withdraw.

---

[3] Def.'s Cert. of Service, ECF No. 77.

[4] *See* Pls.' Cert. of Service, ECF No. 85. The Court notes that the certificate of service page of Plaintiffs' Rule 26(e)(1) Supplemental Initial Disclosures is dated November 9, 2015. At the March 11, 2016 telephone conference, Defendant's counsel indicated that he believed the November 9 date was a typographical error and stated that Defendant received Plaintiffs' Supplemental Initial Disclosures on November 24, 2015, the date reflected in Plaintiffs' Certificate of Service filed with the Court. Plaintiffs did not dispute this.

This deadline is absolute and no extensions will be granted. The parties shall then confer . . . about Plaintiffs' remaining supplemental disclosures. If counsel cannot reach an agreement regarding the propriety of any such supplemental disclosures, then Defendant may file a motion to strike and/or exclude such supplemental disclosures by January 15, 2016. If Defendant files a motion, it need not raise again the already discussed issues of untimeliness or the reason therefore. Instead, the motion shall focus on what witness or information was newly disclosed and any prejudice resulting from the late disclosure. **Any new witnesses or treating physicians identified by Plaintiffs for the first time after November 5, 2015 likely will be stricken as untimely, and Plaintiffs likely will not be allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless**.[5]

The parties conferred and, in response to Defendant's concerns and objections to the untimeliness of Plaintiffs' Supplemental Initial Disclosures, Plaintiffs' counsel sent a six-page letter on December 23, 2015 providing more information about the witnesses and documents disclosed.[6] Plaintiffs did not withdraw any of their supplemental disclosures.

Defendant filed its Motion to Strike Plaintiffs' Untimely Supplemental Rule 26 Disclosures (ECF No. 96) on January 14, 2016. Plaintiffs filed their Response (ECF No. 103) on February 2, 2016.[7]

---

[5] Order Memorializing Rulings from December 11, 2015 Status Conference at 2–3, ECF No. 90 (bold added).

[6] Dec. 23, 2015 letter, ECF No. 96-3.

[7] Although the Response was filed five days late, the Court denied Defendant's Motions to Strike Plaintiffs' Response, ECF No. 134. Accordingly, the Court considers Plaintiffs' Response (ECF No. 103) in its ruling herein.

**II.**    **Defendant's Motion to Strike Witnesses and Documents First Identified in Plaintiffs' November 24, 2015 Supplemental Initial Disclosures**

Defendant has filed its motion requesting that the Court strike 14 witnesses, 24 scholarly articles, and 17 documents identified in Plaintiffs' Rule 26(e)(1) Supplemental Disclosures served on November 24, 2015—after the deadline for supplementation had passed—as untimely and prejudicial. Consistent with the Court's Order from the December 11, 2015 Status Conference, Defendant's motion focuses on what witnesses and information were newly disclosed and any prejudice resulting from the late disclosure.

Federal Rule of Civil Procedure 26(a)(1)(A) requires the parties, without awaiting a discovery request, to provide to the other parties "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."[8] A party must also provide "a copy—or description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."[9]

Rule 26(e) governs the supplementation of disclosures and discovery responses. It requires a party to "supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the

_____

[8] Fed. R. Civ. P. 26(a)(1)(A)(i).

[9] Fed. R. Civ. P. 26(a)(1)(A)(ii).

additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or as ordered by the court."[10]

The mandatory initial and supplemental disclosure requirements of Rule 26 are intended to provide sufficient detail and clarity to permit each party "to make informed decisions about the discovery necessary to address the specific claims directed against that party, and to prepare for trial."[11] Alternative methods of supplementation must be consistent with these objectives.[12]

> Although Rule 26(e)(1) recognizes that supplementation of initial disclosures can take various forms, alternative methods for supplementation must be consistent with and further the objectives underlying the mandatory disclosure requirement. Rule 26(e)(1) must be governed by the same "common sense" standard applicable to Rule 26(a), and supplemental disclosures should provide the opposing party with enough useful information to make informed decisions regarding discovery and trial preparation.[13]

The sanction for failing to provide information or to identify a witness as required by Rule 26(a) or (e), is that the noncompliant party is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified *or* is harmless."[14]   The determination of whether a Rule 26(a) violation is justified or harmless is

---

[10] Fed. R. Civ. P. 26(e)(1)(A)-(B).

[11] *Sender v. Mann*, 225 F.R.D. 645, 655 (D. Colo. 2004).

[12] *Id.*

[13] *Id.*

[14] Fed. R. Civ. P. 37(c)(1) (emphasis added).

"entrusted to the broad discretion of the district court."[15]  While a court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose," the court should be guided by the following factors: 1) the prejudice or surprise to the party against whom the testimony is offered, 2) the ability to cure any prejudice, 3) the potential for trial disruption if the testimony is allowed, and 4) the erring party's bad faith or willfulness.[16] The party who failed to make the required disclosure has the burden to demonstrate substantial justification or the lack of harm.[17]  In addition to or instead of this sanction, the court "(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi)."[18]  Sanctions available under Rule 37(b)(2)(A) include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" and "striking pleadings in whole or in part."[19]

---

[15] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

[16] *Id.*

[17] *See Burton v. R.J. Reynolds Tobacco Co.*, 203 F.R.D. 636, 639 (D. Kan. 2001) (burden to establish harmlessness is on the party who failed to make the required disclosure); *Paliwoda v. Showman*, No. 12-2740-KGS, 2013 WL 5938027, at *7 (D. Kan. Nov. 6, 2013) (burden to demonstrate substantial justification and the lack of harm is on the party who failed to make the required disclosure).

[18] Fed. R. Civ. P. 37(c)(1).

[19] Fed. R. Civ. P. 37(b)(2)(A)(ii) and (iii).

Because Plaintiffs failed to serve their Supplemental Initial Disclosures by the Scheduling Order deadline and that deadline was not extended, Plaintiffs have the burden to demonstrate that their failure to timely provide information required by Rule 26(a) was substantially justified or harmless. Plaintiffs argue that it is *Defendant* who has the burden to prove that it was prejudiced by the untimely disclosures. Although the Court instructed Defendant to identify the witnesses and information newly disclosed in Plaintiffs' Supplemental Initial Disclosures with Defendant's focus on "any prejudice resulting from the late disclosure," and that will weigh in the Court's analysis, the Court's Order did not relieve Plaintiffs of their burden to show that their untimely disclosures were substantially justified or harmless to Defendant.[20]  Plaintiffs bear that burden and were warned that witnesses and information they disclosed untimely likely would be stricken or disallowed, unless the failure was substantially justified or harmless to Defendant.

In this case, Plaintiffs admit the untimeliness of their supplemental disclosures and offer no explanation from which the Court could find the untimeliness was substantially justified. The Court therefore focuses on whether Plaintiffs have demonstrated that the 19-day delay in notifying

---

[20]  *See Burton*, 203 F.R.D. at 639 (burden to establish harmlessness is on the party who failed to make the required disclosure) and *Paliwoda v. Showman*, No. 12-2740-KGS, 2013 WL 5938027, at *7 (D. Kan. Nov. 6, 2013) (burden to demonstrate substantial justification and the lack of harm is on the party who failed to make the required disclosure). The Court notes that a few other cases have suggested that the burden of showing prejudice is on the party moving to strike the witnesses and exhibits not timely disclosed. *See Nelson v. City of Wichita, Kan.*, 217 F. Supp. 2d 1179, 1188 (D. Kan. 2002) ("In moving to strike witnesses or exhibits not timely disclosed, a party must show prejudice."); *Kaufmann v. United States*, No.  88-2193-O, 1990 WL 58687, at *1 (D. Kan. Apr. 25, 1990) (finding the plaintiff, who filed the motion to strike witness and exhibit list, failed to show that she was prejudiced or surprised by the defendant's untimely filing). The Court in this case holds that under Rule 37(c)(1)(A) it is the party who failed to disclose or supplement who has the burden of showing its failure to disclose was substantially justified or is harmless.

Defendant of the witnesses, scholarly articles, and documents that Plaintiffs may use to support their claims—disclosed in Plaintiffs' November 24, 2015 Supplemental Initial Disclosures—is harmless to Defendant.

### A.       Newly Disclosed Witnesses

In their Supplemental Initial Disclosures, Plaintiffs listed 32 names of individuals who may have discoverable information relevant to the disputed facts and who Plaintiffs claim were either previously identified or newly identified, noting that some had been deposed. In accordance with the Court's Order from the December 11, 2015 status conference, Defendant identifies in its motion the witnesses and information listed in Plaintiffs' Supplemental Initial Disclosures that it contends were disclosed for the first time on November 24, 2015—19 days after the deadline for supplementation had passed.   On that basis, Defendant requests that the Court strike the following 14 individuals: Mark Blankenship; Dean Lackey; Mykol Barksdale; Shane Biggler; Matthew Wurm, Jr.; Brent Northern; Dr. Michael West; Kathryn Rotert, RN; Dr. William Taylor; Matthew Wurm, Sr. (limiting Mr. Wurm to the issues on which he was previously identified); Dr. Bradley Woods; Dr. John Jones; Dr. James Legako; and Dr. Donald Pojman. Defendant argues that these individuals were never disclosed by Plaintiffs as witnesses at any point during discovery of this case, the delay in disclosing them is prejudicial to Defendant, and Plaintiffs' untimely disclosure of these witnesses should be stricken.

### 1.       Fact Witnesses and Treating ER Medical Staff

In their response, Plaintiffs attempt to demonstrate that Defendant was previously aware of fact witnesses Blankenship, Lackey, and Barksdale. Plaintiffs' disclosures identify Blankenship as

the guardian for Plaintiff Georgia Iocco, Lackey as the fiancée of decedent's family member present at the ER, and Barksdale as the driver of the other vehicle involved in the subject accident. Plaintiffs assert that they seasonably provided discovery to Defendant's counsel prior to the date of their supplemental disclosures and throughout the litigation. They point to an interrogatory answer, deposition, and police report, respectively, where these specific individuals are mentioned. Plaintiffs argue that these prior references contradict Defendant's assertion of surprise and assertion that it was not provided timely information sufficiently in advance of the discovery deadline to prepare its defenses.

Plaintiffs also attempt to demonstrate that Defendant was aware of treating Emergency Room ("ER") medical staff Dr. Michael West; Kathryn Rotert, RN; and Dr. William Taylor. Plaintiffs identified them by name and title, with no further indication what knowledge they possess. In their response, Plaintiffs argue that Dr. West, the physician who treated the driver of the subject vehicle, was identified in an email sent on April 2, 2015.[21] Plaintiffs claim that Nurse Rotert, the ER nurse who treated the decedent, was mentioned in the ER medical records. Plaintiffs further claim that medical records provided to Defendant mention Dr. Taylor as the physician who authenticated the 3-D certification of the radiological and CT findings.

The Court has reviewed the materials provided in which Plaintiffs claim these individuals

---

[21] But the April 2 email message does not mention Dr. West; rather, it simply attaches medical records purportedly from Dr. West. An email forwarding medical records signed by Dr. West is not sufficient to put Defendant on notice that Plaintiffs intended to list Dr. West as a Rule 26(a)(1)(A) witness. Plaintiffs' argument that Defendant's attempt to exclude Dr. West "would have the effect or result of committing a fraud upon the Court" (ECF No. 114 at 12) is totally without merit and warrants no further discussion by the Court.

were previously disclosed.   From its review, the Court finds that Plaintiffs' prior references to these individuals in an interrogatory answer, during a deposition, in a police report, and in medical records produced during discovery were not sufficient to put Defendant on notice that Plaintiffs intended to list these individuals as Rule 26(a)(1)(A) witnesses likely to have discoverable information that Plaintiffs may use to support their claims. In *Clean Harbors, Inc. v. CBS Corp.*, the defendant filed a motion to strike an affidavit from a witness who had not been disclosed in either the plaintiff's Rule 26(a)(1) or (e) disclosures.[22]  In granting the motion to strike the affidavit, the court rejected the plaintiff's argument that the defendant previously knew about the witness.[23]  The court concluded that just because the defendant knew of the late disclosed witness did not mean it knew that the plaintiff would rely on him as a witness.[24]

The Court holds that prior references to these witnesses in an interrogatory answer, a deposition, police report, and/or medical records[25] did not supplant Plaintiffs' duty to serve formal Rule 26(a)(1) and 26(e) disclosures for the referenced witnesses. Like the court recognized in *Clean Harbors*, the fact the opposing party knows of an individual does not mean that party would necessarily know the other party intends to rely upon that individual as one of its witnesses likely to have discoverable information. And, as stated by the court in *Sender v. Mann*, alternative

---

[22] *Clean Harbors, Inc. v. CBS Corp.*, 875 F. Supp. 2d 1311, 1316–17 (D. Kan. 2012).

[23] *Id.*

[24] *Id.* at 1317.

[25] The Court notes that these prior references in discovery were generic and did not identify any of these individuals as potential witnesses for Plaintiffs.

methods for supplementation must be consistent with and further the objectives underlying the mandatory disclosure requirement, by providing sufficient detail and clarity to permit the non-disclosing party to make informed decisions about discovery and trial preparation.[26]

      Plaintiffs' argument that Defendant should have known Plaintiffs intended to disclose these witnesses because they were referenced in discovery flies in the face of the intent and common sense application of Rule 26 disclosures. If a mere reference to an individual in an interrogatory answer, deposition, or documents produced during discovery could suffice as a proper Rule 26 disclosure, then an opposing party would need to scour every such document and consider whether to depose or conduct other discovery regarding each person referenced in such documents. This is contrary to the disclosure requirements of Rule 26, which place the burden on each party to identify individuals likely to have discoverable information that party may use to support its claims or defenses, so that the opposing party can make an informed discovery plan.

      Because the prior references to these individuals in discovery are not sufficient to reasonably inform Defendant that Plaintiffs intended to disclose them as witnesses, Plaintiffs must show that the late disclosure of these witnesses was harmless to Defendant. In this case, the Court finds Plaintiffs' failure to timely supplement their disclosures to identify Blankenship, Lackey, and Barksdale, Dr. West, Kathryn Rotert, and Dr. Taylor as witnesses, along with the subjects of their knowledge, was *not* harmless to Defendant. As emphasized in the Scheduling Order, Plaintiffs were required to identify "all witnesses and exhibits that probably or even might be used at trial." The purpose of these disclosures was to place the opposing party and counsel in a

---

[26] *Sender*, 225 F.R.D. at 655.

"realistic position to make judgments about whether to take a particular deposition or pursue follow-up 'written' discovery before the time allowed for discovery expires." Stated in terms of the factors for determining whether a failure to disclose is harmless, as set forth above,[27] Defendant was understandably surprised by Plaintiffs' supplemental disclosure of these six individuals almost three weeks after the deadline for final supplemental disclosures had passed, and with mere oblique references to these individuals in discovery. Defendant would thus be prejudiced if these untimely disclosures were allowed, especially given the significant number of witnesses and documents identified in Plaintiffs' late disclosure and the limited time remaining for discovery, which would not allow the prejudice to be cured.

The Court recognizes that the December 15, 2015 discovery deadline had not yet passed at the time Plaintiffs supplemented their initial disclosures on November 25, 2015. Thus, arguably any prejudice to Defendant might have been mitigated by the remaining time before the discovery deadline, during which Defendant could have conducted additional discovery regarding Plaintiffs' newly disclosed witnesses and documents. However, Plaintiffs disclosed 14 witnesses, 24 scholarly articles, and 18 documents purportedly for the first time in their untimely supplemental initial disclosures. The significant number of witnesses, as well as scholarly articles and documents discussed below, that the Court determines herein were newly disclosed by Plaintiffs in their untimely disclosures, made it impossible for Defendant to complete discovery relative to the new disclosures in the 21 days before the discovery deadline expired.

---

[27] *Woodworker's Supply*, 170 F.3d at 993 (prejudice or surprise, ability to cure prejudice, potential for trial disruption, and bad faith or willfulness) .

13

Defendant cites two District of Kansas cases rejecting arguments that any prejudice due to the untimely disclosure of witnesses or expert reports could be cured because the disclosure was before the discovery deadline expired. In *Bell v. City of Topeka, Kansas*, the defendants moved to strike four witnesses who were first disclosed by the plaintiff 22 days after the supplemental disclosures deadline, but 18 days before the close of discovery.[28]  In addition to the disclosures being served a couple of weeks before the discovery deadline, the defendants also listed other scheduling conflicts such as depositions and witnesses meetings that would not allow defendants' counsel to conduct last minute discovery.[29]  The court found that the defendants were prejudiced by the last minute disclosures, and ordered the plaintiff's untimely disclosed witnesses and exhibits stricken.[30]

Similarly, in *Aid for Women v. Foulston*, the plaintiffs objected to a supplemental expert report served by defendants after the deadline for serving expert reports, but 15 days before the discovery deadline.[31]  The defendants offered to allow another deposition of their expert concerning the supplemental report. The court was not receptive, finding that the defendants' offer to allow the expert to be re-deposed did not cure the problem and would "effectively result in the

---

[28] *Bell v. City of Topeka, Kan.*, No. 06-4026-JAR, 2007 WL 628188, at *1–2 (D. Kan. Feb. 26, 2007).

[29] *Id.* at *2.

[30] *Id.* Although the *Bell* opinion states that it agreed *plaintiff* was prejudiced by the last minute disclosures, it clearly meant that *defendants* were prejudiced as it was granting defendants' motion to strike plaintiff's witnesses and exhibits.

[31] *Aid for Women v. Foulston,* No. 03-1353-JTM, 2005 WL 6964192, at *4 (D. Kan. July 14, 2005).

reopening of discovery which effectively undermines the very reason for setting expert deadlines in a scheduling order."[32]  The court noted there had been ample time for discovery and any reopening of discovery would arguably prejudice the plaintiffs by necessitating not only the retaking of depositions of defendants' experts, but also requiring plaintiffs' experts to prepare yet another rebuttal report.[33]

   The *Bell* and *Aid for Women* cases are instructive here, where the magnitude of the untimely disclosures is much greater. In this case, the Court finds that because Plaintiffs' supplemental disclosures were untimely, Defendant was not placed in a realistic position to make judgments about whether to take a particular deposition or pursue follow-up written discovery *before* the time allowed for discovery expired. Absent an extension of the discovery deadline, written discovery by Defendant was foreclosed because it could be served in time to have been completed by the discovery cutoff deadline.[34]  Defendant also did not have sufficient time before discovery closed to notice, schedule, and depose these six witnesses, as well as review and conduct discovery regarding the numerous newly disclosed scholarly articles and documents discussed subsequently. Extending the discovery deadline would have necessitated corresponding extensions of the deadline for filing dispositive motions and very likely the trial setting. In addition

---

[32] *Id.* at *4.

[33] *Id.* Even though the *Aid for Women* case involved an untimely supplemental expert report, the Court finds the rationale used for determining whether the untimely disclosure was prejudicial or harmless is still applicable to this case, where untimely supplemental initial disclosures are at issue.

[34] *See* Amended Scheduling Order (ECF No. 43) at 5 ("All discovery must be commenced or served *in time to be completed by* December 15, 2015.") (emphasis added).

to delaying the trial, the number of witnesses disclosed in Plaintiffs' untimely supplemental disclosures and the potential significance of them effectively would mean that discovery would have to be reopened and possibly some depositions retaken, all arguably to the prejudice of Defendant. The Court therefore strikes Plaintiffs' supplemental disclosure of fact witnesses Blankenship, Lackey, and Barksdale and treating ER medical staff Dr. West, Nurse Rotert, and Dr. Taylor as untimely and prejudicial to Defendant.

### 2. Foundation Witnesses

Plaintiffs also listed two witnesses they intend to use at trial for purposes of establishing the foundation of trial exhibits. Plaintiffs identified Shane Biggler "[t]o testify as foundation witness regarding Plaintiffs' photo demonstration as individual cutting the actual frame of the subject [vehicle] to remove a section of the vehicle." They identified Brent Northern merely as a photographer. In their response to the motion, Plaintiffs explain that they intend to use Biggler as a foundation witness regarding preparation of the cut-out of subject vehicle as a trial exhibit and "for no other purpose than to authenticate the trial exhibit." With regard to Northern, Plaintiffs indicate that they identified him as the photographer for foundation purposes and clean-up of the Matt Wurm videos.

Because Plaintiffs are only identifying Biggler and Northern as foundation witnesses, the Court finds that the late disclosure of these witnesses is harmless to Defendant. The Court therefore denies Defendant's Motion to Strike Plaintiffs' supplemental disclosure of Biggler and Northern as foundation witnesses.

### 3.      The Wurms

Plaintiffs' Supplemental Initial Disclosures list Matthew Wurm and Matthew Wurm, Jr. as witnesses.   Defendant agrees that Mr. Wurm, Sr., however, was previously identified in Plaintiffs' Rule 26(a)(1) initial disclosures as a witness who would conduct a recorded demonstration of the alleged failure of the belting restraint system.   Defendant states it has no objection to Mr. Wurm's disclosure regarding the first demonstration that was performed but does object to Plaintiffs' disclosures of Mr. Wurm on any other topic, including the October 20, 2015 video. As explained below, the Court is striking the October 20, 2015 video but allowing a subsequent video to be taken, subject to Defendant's representative being present. Accordingly, the Court denies Defendant's Motion to Strike Plaintiffs' supplemental disclosure of witness Matthew Wurm, Sr. only insofar as he is the witness who conducted the earlier recorded demonstration of the alleged failure of the belting restraint system and insofar as he may conduct a subsequent video demonstration in accordance with this Order, as set out below.

With regard to Matthrew Wurm, Jr., the Court finds that his name and address were disclosed for the first time in Plaintiffs' Supplemental Disclosures. Plaintiffs explain that Mr. Wurm, Jr. was the teenager depicted in the October 20, 2015 video. The Court therefore denies Defendant's Motion to Strike Plaintiffs' supplemental disclosure of witness Matthew Wurm, Jr. only insofar as he may appear in a subsequent video demonstration in accordance with this Order, as set out below.

### 4.      Treating Physicians Previously Designated

Plaintiffs identified Drs. Woods, Jones, Legako, and Pojman in their November 24, 2015

17

Supplemental Initial Disclosures as treating physicians. Plaintiffs argue that they previously designated and disclosed these physicians by name in a March 2, 2015 email to Defendant's counsel. Defendant admits that Plaintiffs' counsel sent an email on March 2, 2015 naming these physicians, but argues that Plaintiffs later impliedly withdrew the disclosures.

The Court finds that Plaintiffs sufficiently notified Defendant that Plaintiffs were designating these physicians in the March 2, 2015 email. A review of that email reveals that Plaintiffs designated Drs. Woods, Jones, Legako, and Pojman, and identfied them by specialty or department.   The Court rejects Defendant's argument that Plaintiffs implicitly withdrew their designation by not later re-naming these physicians when serving additional expert disclosures for their experts McLellan and Parcells.   As of March 2, 2015, Defendant was on notice that Plaintiffs were designating these physicians as treating physicians and there was never any express withdrawal of those designations.   Plaintiffs have thus shown any delay in serving their Supplemental Initial Disclosures with respect to these four treating physicians was harmless to Defendant. The Court therefore denies Defendant's Motion to strike Plaintiffs' supplemental disclosure of these witnesses.

Defendant requests that if the Court finds Drs. Woods, Jones, Legako, and Pojman were not newly disclosed, that discovery be reopened so it can depose them. Given Plaintiffs' piecemeal supplementations over time, it is understandable that Defendant might have been confused or misunderstood whether Plaintiffs were withdrawing their designations of these treating physicians. Accordingly, the Court grants Defendant's request. Defendant, if it so chooses, may depose Drs. Woods, Jones, Legako, and Pojman after discovery has closed. However, any such

18

depositions must be noticed, scheduled, and completed by **May 13, 2016**.

### B.     Newly Disclosed Scholarly Articles and Treatises

In their Supplemental Initial Disclosures, Plaintiffs listed 28 scholarly articles and treatises as recent authoritative sources pertinent to the issues in the case. Defendant moves to strike 24 of these scholarly articles on grounds Plaintiffs' untimely disclosure of the articles is prejudicial. Defendant contends that none of the 24 articles it seeks to strike were mentioned or attached to Plaintiffs' expert disclosures or reports.

Plaintiffs argue that all of the listed articles are learned treatises or recognized within the industry as authoritative, which either pertain to the issues of abdominal injury and death related to injury pattern caused by trauma due to air bag contact or trauma due to seatbelt contact. They further argue that these articles were acknowledged by Defendant's expert Dr. Scott in his deposition, as well as Defendant's corporate representative at his deposition. They claim these articles pertain to topics that have been raised by the Plaintiffs or identified in their expert witness reports. Finally, Plaintiffs assert that Defendant is not prejudiced by the late disclosures of these learned treatises or authoritative works pertaining to the relevant or pertinent issues surrounding the instant litigation.

At the March 11, 2016 Status Conference, Plaintiffs argued that the scholarly articles listed in their Supplemental Initial Disclosures had been previously identified by either Plaintiffs' or Defendant's designated experts, or referenced at the experts' depositions. Defendant denied this. The Court has reviewed the March 2, 2015 and June 11, 2015 expert reports (with June 26, 2015 supplemented attachments) of Plaintiffs' expert David McLellan and the June 22, 2015 expert

19

report of Plaintiffs' expert Shawn Parcells. Based upon that review, the Court did not find any reference or citation to any of the scholarly articles that Defendant is seeking to strike.[35]

Plaintiffs have attached an excerpt from the December 18, 2015 deposition of Defendant's designated expert, Dr. William Scott, along with several exhibits from his deposition.   The following two deposition exhibits are purported scholarly articles listed on Plaintiffs' Supplemental Initial Disclosures: "Abdominal Injury with Airbag Deployment for Belted Drivers in Frontal Crashes,"[36] and "Death Caused by Airbag in Vehicle."[37]   Although Plaintiffs have shown that these two articles were deposition exhibits,[38] the Court notes that Dr. Scott's deposition was not taken until December 18, 2016, which was after Plaintiffs served their untimely Supplemental Disclosures. This fails to establish the articles were disclosed to Defendant before November 24, 2015.

Plaintiffs also refer the Court to an October 7, 2015 email from their counsel to their experts that attaches abstracts of most of the scholarly articles Defendant seeks to strike. The Court

---

[35] Parcells's expert report does cite the article, "Injuries Associated with Airbag Deployment" as a reference, which Plaintiffs included in their Supplemental Initial Disclosures. However, Defendant is not seeking to strike the disclosure with respect to this article. McLellan's June 26, 2015 supplemented expert report also attached two articles listed on Plaintiffs' Supplemental Initial Disclosures.   But again, Defendant is not requesting the Court strike these two articles.

[36] ECF No. 103-14 at 10.

[37] ECF No. 103-14 at 5.

[38] Plaintiffs' counsel first identified these exhibits during the deposition of Defendant's expert Dr. Scott.   To the extent Plaintiffs intend to utilize this article or other scholarly articles solely for "impeachment" purposes, Plaintiffs' failure to disclose the articles will not preclude their use for impeachment purposes only. See Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii) ("a party must . . .provide [the information required under that Rule] . . . unless the use would be solely for impeachment").

has reviewed the email and attachments, but fails to see how an email from Plaintiffs' counsel sent to Plaintiffs' experts demonstrates that *Defendant* knew about the articles prior to Plaintiffs' supplemental disclosure of them. Plaintiffs provide nothing to indicate that Defendant's counsel was included as a recipient of the email or that these articles were actually used or referenced as exhibits during expert depositions. To the contrary, the October 7, 2015 email makes reference to it being work product.

Accordingly, Plaintiffs have failed to show that the 24 scholarly articles listed in their untimely Supplemental Initial Disclosures were previously disclosed to Defendant. Plaintiffs therefore must show that their late disclosure of the scholarly articles is harmless to Defendant. Plaintiffs have not made such a showing.

Plaintiffs' counsel agreed during the March 11, 2016 conference that Plaintiffs intended to use the purported scholarly articles during expert witnesses testimony. Rule 26(a)(2)(B) requires an expert report to include any exhibits to be used as support for the expert's opinions.[39] Plaintiffs failed to supplement their experts' reports pursuant to Rule 26(e), to identify or attach any of the scholarly articles listed in Plaintiffs' Supplemental Initial Disclosures.

Plaintiffs' delay is not harmless. Defendant would be prejudiced by the late disclosure of these articles because it has already taken the depositions of Plaintiffs' experts. Defendant deposed Parcells on August 19, 2015 in Kansas and McLellan on August 25, 2015 in Michigan. Allowing

---

[39] *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 173 F.R.D. 675, 677 (D. Kan. 1997) (court ruled that it would only consider exhibits attached to the expert's report; holding that admitting new exhibits not included with the expert's report "would defeat the purpose of the disclosure requirements and would encourage 'sandbagging'").

the late disclosure of these numerous technical scholarly articles could require Defendant to have its own experts review the articles and issue new reports addressing them, and could very well necessitate additional depositions of the experts. Defendant would also be prejudiced because it has already filed a motion for summary judgment and motions to exclude the expert testimony of Plaintiffs' expert witnesses, which are all currently pending before the Court. Moreover, at the December 11, 2015 Status Conference, the Court specifically directed Plaintiffs' counsel to notify defense counsel whether he was willing to withdraw any of Plaintiffs' supplemental disclosures that had not been previously disclosed. Even after conferring with Defendant about the disclosures, Plaintiffs' counsel refused to withdraw a single supplemental disclosure. Thus, Defendant had to prepare its motion to strike the scholarly articles at significant time and expense, which should have never been necessary had Plaintiffs withdrawn the articles they knew had not been previously provided to Defendant. All of this, along with the number and nature of the articles disclosed by Plaintiffs for the first time, as discussed previously in Section II.A.1. above, convince the Court that Plaintiffs' late disclosure of the articles is not harmless to Defendant. The Court therefore strikes Plaintiffs' supplemental disclosure of the 24 scholarly articles identified in Defendant's Motion to Strike as untimely and prejudicial to Defendant.

### C.     Newly Disclosed Documents and Wikipedia References

In their Supplemental Initial Disclosures, Plaintiffs listed 22 documents and Wikipedia references that they claim may be relevant to disputed facts in the case. Defendant moves to strike 17 of these documents because they were first disclosed on November 24, 2015, after the deadline

for supplementation had passed, and because Defendant contends the delay in disclosing them is prejudicial.

### 1.      October 20, 2015 Video Demonstration

Defendant moves to strike Plaintiffs' supplemental disclosure of the October 20, 2015 video demonstration of the subject vehicle's safety restraint system. Defendant claims that it was first notified of Plaintiffs' intent to "arrange a demo filmed" via email on August 21, 2015. At that time, Defendant's counsel was attempting to confirm with Plaintiffs' counsel the timing of Defendant's testing. Concerned that Plaintiffs were planning to conduct testing on the subject vehicle without a Court Order and without the presence of any Defendant representative, Defendant's counsel sent a letter to Plaintiffs' counsel advising that Defendant "objects to any testing and/or demonstration performed on the subject vehicle without prior notice." Plaintiffs responded to Defendant's letter "promising" to "not conduct any independent testing of the SRS unless as per the protocol of the Court's Order." Out of an abundance of caution, and to clear up any possible ambiguity in Plaintiffs' previous email "promise," Defendant's counsel convened a short telephone conference with Plaintiffs' counsel regarding any proposed "demonstration." After that call, Defendant's counsel memorialized the parties' agreements and confirmed that Plaintiffs' counsel agreed to not perform any demonstration or testing on the subject vehicle without the opportunity for Defendant's representative to be present. Plaintiffs' counsel responded by email dated August 28, 2015, agreeing to delay the video demonstration.

On November 6, 2015, Plaintiffs' counsel sent an email to Defendant's counsel with photographs taken of the demonstration Plaintiffs conducted on October 20, 2015. At the March

11, 2016 Status Conference, Plaintiffs' counsel admitted that the "Video Demo 1999 Ford Contour Front Passenger Airbag Deployment" was referring to the October 20, 2015 videotaping that Plaintiffs conducted without Defendant's representative present, despite Plaintiffs agreeing to delay the demonstration until Defendant's representative could be present. When the Court inquired why Plaintiffs proceeded with the demonstration without Defendant's representative present, Plaintiffs' counsel described this action as a "misstep."

The Court strikes Plaintiffs' supplemental disclosure of the October 20, 2015 video demonstration as untimely and because it was done without Defendant's representative present. The Court will, however, allow Plaintiffs time to retake the video demonstration of the subject vehicle's safety restraint system upon appropriate notice to Defendant and at an agreed time and place, no later than **May 13, 2016**, and with Defendant's representative present during the demonstration.[40]

### 2.    Subject Vehicle Cut-out Exemplar

Plaintiffs list "Subject 1999 Ford Contour, Actual Component Passenger Seat and Car Frame with Retractor and Air Bag for Trial Demonstration" on their Supplemental Disclosures. Plaintiffs also refer to this as a "cutaway" of the subject vehicle and state that they intend to use

---

[40] If Defendant considers it necessary, **within seven days after the video is finalized**, Defendant may file a motion specifically requesting the deposition of anyone associated with the demonstration. Any such motion, shall state the reason for the deposition(s) and propose dates for the deposition(s). The Court will determine whether such depositions will be allowed and, if so, who will bear the costs associated with such deposition(s).

this exemplar only as a demonstrative exhibit at trial.[41]  Based upon Plaintiffs' representation that this would be an actual cutaway of the subject vehicle and used merely for demonstrative purposes at trial, the Court concludes that allowing the disclosure of the cutaway for demonstrative purposes only is harmless.   Whether the cutaway will be admissible at trial is a very different question, one which will be determined by the District Judge. Accordingly, the Court denies Defendant's Motion to Strike Plaintiffs' Supplemental Initial Disclosures with respect to "Subject 1999 Ford Contour, Actual Component Passenger Seat and Car Frame with Retractor and Air Bag for Trial Demonstration."

### 3.      Crash Barrier Testing Videos

Plaintiffs list "videos of crash barrier testing" on their Supplemental Disclosures. Plaintiffs explain that they want to show the jury these videos. Defendant objects that Plaintiffs' listing is too vague for Defendant to know what particular crash barrier videos Plaintiffs are listing in their disclosures.   The Court agrees it is not clear what particular videos Plaintiffs are attempting to identify or disclose. The Court also notes that these videos would be the subject of expert witnesses testimony and therefore should have been included in expert designations and disclosures.

Defendant indicated at the March 11, 2016 Status Conference that it would not have an objection to videos identified in an expert report, attached to an expert's report, or in an expert's deposition being introduced at trial, subject to any future trial admissibility objection. The Court

---

[41]  Pls.' Resp., ECF No. 103, at 6.

concludes that limiting the crash barrier testing videos in this way would cure any harm to Defendant due to Plaintiffs' late disclosure.   Defendant's Motion to Strike Plaintiffs' Supplemental Disclosures with respect to "videos of crash barrier testing" is therefore denied but Plaintiffs' disclosure is limited to videos of crash barrier testing identified in an expert's report, attached to an expert's report, or identified during an expert's deposition.   The Court's ruling herein is limited to Plaintiffs' Supplemental Initial Disclosures, and the Court makes no ruling with respect to the admissibility of any such crash barrier testing videos.

### 4.   Wikipedia References

Plaintiffs list in their Supplemental Initial Disclosures the Wikipedia definitions for the four terms: "Harry Houdini," "Air Bag," "Chief Engineer," and "millisecond."   Defendant moves to strike these supplemental disclosures. The Court finds Plaintiffs' disclosure of the Wikipedia definitions, even if untimely, is likely harmless to Defendant. It is difficult to imagine just how Plaintiffs might use these references at trial, and so this Court concludes rulings on these Wikipedia references are better left to the presiding trial judge. Therefore, Defendant's Motion to Strike them is denied. The Court is expressly not making any rulings with respect to the admissibility of the Wikipedia definitions.

### 5.   October 7, 2015 Email Between Plaintiffs' Counsel and their Experts

Plaintiffs' Supplemental Initial Disclosures also list the October 7, 2015 email from their counsel to their experts. This is the same email discussed above that attached abstracts of most of the scholarly articles Defendant also seeks to strike. For the same reasons stated above, the Court finds that Plaintiffs have not shown Defendant previously knew of this email or its attachments.

As noted above, the Court fails to see how an email from Plaintiffs' counsel sent to Plaintiffs' experts demonstrates that *Defendant* knew about the email and its attachments prior to Plaintiffs listing the email in their supplemental disclosures. There is no indication that Defendant's counsel was included as a recipient of the email or that these articles were actually used or referenced as exhibits during the depositions of Plaintiffs' experts. Plaintiffs have further not shown that their late disclosure of this email (with numerous pages of abstracts of scholarly articles) was harmless to Defendant. The Court therefore strikes Plaintiffs' Supplemental Initial Disclosures with respect to the October 7, 2015 email and its attachments.

### 6.      Diane McDermed September 18, 2015 Email

Defendant also requests that the Court strike Plaintiffs' untimely supplemental disclosure identifying a September 18, 2015 email from Plaintiff Diane McDermed to Plaintiffs' counsel regarding Defendant's Chief Engineer. Plaintiffs state in their response that the email pertaining to the chief engineer for Ford Motor Company was seasonably provided to Defendant's counsel and no prejudice has been shown. Plaintiffs, however, fail to provide any support for their vague assertion that this email was previously produced to Defendant or that its late disclosure is harmless to Defendant. The Court therefore strikes Plaintiffs' Supplemental Initial Disclosures as to the September 18, 2015 email.

### 7.      Diagrams and Schematics

Defendant also requests that the Court strike Plaintiffs' untimely supplemental disclosure of:

All diagrams and schematics to the active (seatbelt) and passive (airbag), including

27

all warnings for front passenger seatbelt usage to the 1999 Ford Contour automobile including air bag deployment caution language or visual messaging contained in the Product Owner's Manual or any other publication under the auspices of Ford Motor Company.

With respect to this disclosure, Plaintiffs state that the Owner's Manual to the subject vehicle was provided in discovery and has been discussed and provided for comment with Plaintiffs' designated experts McLellan and Parcells. They also point out the Owner's Manual was discussed at the depositions of the Defendant's corporate representative and expert Dr. Scott.

The Court agrees with Plaintiffs that to the extent their above disclosure is referring to diagrams and schematics contained in the subject vehicle's Product Owner's Manual, that any such late disclosure to Defendant is harmless. Defendant should not be surprised by Plaintiffs' disclosing information contained in the subject vehicle's Owner's Manual, even if late. The Court denies Defendant's Motion to Strike the referenced diagrams and schematics in its Product Owner's Manual.

However, the Court does find Plaintiffs' supplemental disclosure of "any other publication under the auspices of Ford Motor Company" to be vague and could refer to innumerable publications that Defendant would want its experts to review. As such, Defendant would be harmed by Plaintiffs' untimely disclosure of these publications. The Court grants Defendant's motion to strike as to this portion of Plaintiffs' supplemental disclosure. However, to the extent that any of these unidentified publications were identified in an expert report, attached to an expert's report, or discussed in an expert's deposition, the disclosure is not stricken.

### 8.  Medical Records of Driver Emma Edwards

Defendant also requests that the Court strike Plaintiffs' untimely supplemental disclosure

28

of "Emma Edward's Medical Records of Michael West, M.D." Ms. Edward was the driver of the subject vehicle involved in the accident   Plaintiffs argue in their response that these medical records were previously provided to Defendant in an e-mail from their counsel to defense counsel on April 2, 2015.

Plaintiffs have shown that the referenced medical records of Emma Edwards were previously provided to Defendant. They have also shown Dr. West's records regarding Emma Edwards were discussed and disclosed during the deposition of Plaintiffs' expert Parcells, taken on August 19, 2015. As such, there is no harm to Defendant from Plaintiffs' late disclosure of the records on its November 24, 2015 Supplemental Initial Disclosures. Defendant's motion to strike Plaintiffs' supplemental disclosure of the medical records of Ms. Edward—records which were attached to the April 2, 2015 email and/or discussed during the deposition of Plaintiffs' expert Parcells—is denied.

### 9.      Expert Deposition and Expert Report Exhibits

Plaintiffs' Supplemental Initial Disclosures list the following documents discussed as exhibits during expert depositions or attached to or cited in an expert's report:

- Seatbelt Sign Bruising Patterns (McLellan Deposition Exhibit 18).

- Internet Article, "She Was Just Putting Her Feet on the Dashboard—And it Was One of the Biggest Mistakes of Her Life."

- Deposition and Expert Report Exhibits of all Plaintiffs' and Defendant's designated experts.

Plaintiffs argue in their response that the internet article is relevant to the severity of the injury from airbag deployment and was utilized in the depositions of Plaintiffs' designated experts

29

McLellan and Parcells. The article was also provided at the deposition of Defendant's expert Dr. Scott and the deposition of Defendant's corporate representative.

At the March 11, 2016 status conference, the Court inquired whether Defendant objected to allowing any of Plaintiffs' Supplemental Disclosures that had been attached as exhibits to or referenced in an expert's report or deposition.   The Court understood Defendant's response to be that it would not have an objection to a ruling that anything identified in an expert report or deposition, or attached to an expert report, could be introduced at trial, subject to any admissibility objection.   The Court finds Plaintiffs have shown that the three above listed document disclosures listed in Plaintiffs' Supplemental Initial Disclosures would encompass documents identified in either Plaintiffs' or Defendant's expert report(s) or deposition(s), or attached to an expert report. These documents would have been previously disclosed to Defendant, and because they were disclosed in connection with an expert's report or deposition, Defendant would have received notice that Plaintiffs' expert would likely use them at trial. Thus, the late disclosure was harmless to Defendant. Accordingly, Defendant's motion to strike these disclosures is denied.

### 10.   "Reserved" Disclosures

In their Supplemental Initial Disclosures, Plaintiffs state that one of the disclosures is "reserved for further discovery of Rule 30(b)(6) Corporate Representative Deposition (Ram Krishnaswami) and Defendant's Expert Dr. William Scott." The Court does not find this "reservation" of future discovery to be a proper supplemental disclosure under Rule 26(e).

### 11.     Remaining Documents Listed in Plaintiffs' Supplemental Initial Disclosures

The remaining supplemental disclosures that Defendant seeks to strike as untimely and prejudicial include the following:

- December 28, 2012 AMR, ER and December 28, 2012 – December 30, 2012 Hospital Records of Betty L. McDermed.

- SAE's Press Notification March 9, 2015 (Ford's Nan Kockhar Chief Engineer).

The Court finds that Plaintiffs previously provided the decedent's hospital records to Defendant on September 13, 2014. The Court therefore denies Defendant's Motion to Strike the untimely disclosure of these hospital records.

Plaintiffs claim that the SAE press notification was also seasonably provided to Defendant, but provide no support for their vague assertion this was previously produced to Defendant or that the late disclosure is harmless to Defendant. The Court therefore strikes Plaintiffs' Supplemental Initial Disclosures as to the the SAE press notification.

**IT IS THEREFORE ORDERED THAT** Defendant Ford Motor Company's Motion to Strike Plaintiffs' Untimely Supplemental Rule 26 Disclosures (ECF No. 96) is GRANTED IN PART AND DENIED IN PART. The following witnesses and documents listed in Plaintiffs' November 24, 2015 Supplemental Initial Disclosures are hereby stricken as untimely served and the resulting delay not harmless:

(1) fact witnesses Blankenship, Lackey, Barksdale, and treating ER medical staff Dr. West, Nurse Rotert, and Dr. Taylor;

(2) all twenty-four scholarly articles listed in Defendant's Motion to Strike;

(3) October 20, 2015 video demonstration;

(4) October 7, 2015 email from Plaintiffs' counsel to their experts;

(5) Diane McDermed September 18, 2015 email;

(6) "any other publication under the auspices of Ford Motor Company"; and

(7) SAE's Press Notification March 9, 2015 (Ford's Nan Kockhar Chief Engineer).

Defendant's Motion to Strike is otherwise denied, subject to any limitations noted herein.

**IT IS FURTHER ORDERED THAT** Defendant, if it so chooses, may depose Drs. Woods, Jones, Legako, and Pojman after discovery has closed. Any such depositions must be noticed, scheduled, and completed by **May 13, 2016**.

**IT IS FURTHER ORDERED THAT** Plaintiffs may retake the video demonstration of the subject vehicle's safety restraint system upon appropriate notice to Defendant and at an agreed time and place, no later than **May 13, 2016**, and with Defendant's representative present during the demonstration. If Defendant considers it necessary, **within seven days after the video is finalized**, Defendant may file a motion specifically requesting the deposition of anyone associated with the demonstration. Any such motion, shall state the reason for the deposition(s) and propose dates for the deposition(s). The Court will determine whether such depositions will be allowed and, if so, who will bear the costs associated with such deposition(s).

**IT IS FURTHER ORDERED THAT** the rulings contained herein are intended to resolve issues regarding the adequacy of Plaintiffs' Supplemental Initial Disclosures and are not intended to rule or reflect upon the admissibility at trial of any properly disclosed document, article, or witness. All rulings regarding admissibility are reserved for the District Judge.

**IT IS FUTHER ORDERED THAT** each party shall bear its own costs related to the filing of the motion.

IT IS SO ORDERED.

Dated April 1, 2016, at Kansas City, Kansas.

*s/ Teresa J. James*
Teresa J. James
U.S. Magistrate Judge
